## LONE JACK MIN. CO. et al. v. MEGGINSON.

(Circuit Court of Appeals, Ninth Circuit. June 28, 1897.)

### No. 345.

1. APPEAL—OBJECTIONS IN LOWER COURT—EQUITY JURISDICTION.

In an equity proceeding to quiet title, where the trial court had jurisdiction of the subject-matter, an objection to the jurisdiction, on the ground that the complainant had a plain and adequate remedy at law, comes too late when made for the first time on appeal.

2. EXECUTION—SHERIFF'S DEED—LAWS OF CALIFORNIA.

The grantee in a sheriff's deed, made by the successor in office of the sheriff who sold mining property on a valid decree of foreclosure against the owner, has title to such property by virtue of Code Civ. Proc. Cal. § 700, which provides that "upon the sale of real property the purchaser is substituted to and acquires all the right, title, interest, and claim of the judgment debtor thereto," and the act of 1858 authorizing sheriffs to make deeds for lands sold by their predecessors (St. Cal. 1858, pp. 95, 96).

3. MORTGAGES—FORECLOSURE SALE—STATUTORY JUDGMENT LIEN.

The lien enforced upon a foreclosure sale is not a statutory judgment lien, but the contract lien of the mortgage, and the title of the purchaser rests upon such lien. Code Civ. Proc. Cal. § 671, prescribing the period for which a judgment shall live or be a lien, has no application to such sale.

4. SAME—TIME OF SALE.

A sheriff's sale under foreclosure, made more than five years after entry of the decree, is not void by reason of the provision of Code Civ. Proc. Cal. § 681, that execution may be issued at any time within five years after entry of judgment, if the order of sale was issued within the five years.

5. MINING CLAIMS—LOCATION BY ALIEN—DECLARATION OF INTENTION.

The subsequent declaration of intention to become a citizen, by an alien who had explored and located a mining claim on public lands, relates back to the date of the location, and, in the absence of adverse rights attaching prior to the declaration, operates to validate the location.

Appeal from the Circuit Court of the United States for the Northern District of California.

George D. Collins, for appellant.

Reddy, Campbell & Metson and Ira D. Orton, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge.    William Megginson brought a suit in the circuit court against the Lone Jack Mining Company, a corporation, J. F. Turner, Jacob Bertz, Humphrey Lawrence, and George L. Brown to quiet his title to mining property known as the "Lone Jack Quartz Mine," in Slug gulch, El Dorado county, Cal.; alleging in his bill that he was the owner and in possession of said property, and that the defendants claimed an interest therein adversely to him. The bill was taken pro confesso as to all the defendants except the Lone Jack Mining Company.    In its answer to the bill that corporation denied that the complainant owned, or was then or ever had been in possession of, the mining property, and alleged substantially the following facts:    That on November 28, 1888, it had duly located the mining property described in the bill, and had taken all the necessary steps to protect and secure said location, and that for five years continuously prior to the commencement of the suit it had occupied and claimed the same, and paid taxes thereon, and maintained the boundaries thereof.    It further alleged that prior to making its location, in 1888, there had been a mortgage lien of $6,000 upon the property in favor of John Hanley and Julius Johnson; that on March 21, 1884, said mortgagees had commenced a suit to foreclose the mortgage, and on October 4, 1887, obtained a decree of foreclosure; that thereafter Julius Johnson died, and administration was had of his estate, and on September 2, 1890, an administration sale was duly ordered of his interest in the said judgment and decree, and on October 10, 1890, the administrator sold the same to J. Davey for $100; that said Davey, in purchasing said decree, acted as trustee for the Lone Jack Mining Company, and purchased the same with money furnished by that corporation through its president, J. F. Turner, but that on September 28, 1890, said Turner secured from Hanley and Davey an assignment and transfer of said decree to one A. E. Bolton, who was the agent and attorney of the corporation, and said Bolton received the same in trust for the corporation; that on September 19, 1892, the said Hanley and Davey, notwithstanding the former transfer, fraudulently assigned said decree to Lawrence S. Megginson, and that said assignment was made at the instigation of Turner, and for the purpose of securing Megginson for moneys previously loaned to Turner, but that Megginson had notice that the corporation was the owner of said decree; that on November 30, 1892, Lawrence S. Megginson, at the instance of Turner, and for the purpose of defrauding the corporation, obtained an order of sale directing the sheriff of El Dorado county to sell the said property under said decree of foreclosure, and that thereupon C. P. Winchell, the sheriff of said county, did, on October 29th, make sale thereof to Lawrence S. Megginson for the alleged consideration of $9,415.25, and on the same date the said sheriff executed to said purchaser a certificate of sale of said prop-

erty, and thereafter said certificate was transferred to the complainant, William Megginson, but that the latter took the same with notice of the rights of the corporation; that on April 29, 1893, the certificate of sale was surrendered, and a sheriff's deed to said property was obtained from the sheriff of El Dorado county to the said complainant. There are other averments and defenses set up in the answer, but the foregoing is sufficient for the purposes of this appeal. Upon the issues and proofs the court found the equities to be with the complainant, and entered a decree adjudging that the defendants have no interest in said property, and quieting the complainant's title thereto. The assignments of error are mainly directed to the rulings of the trial court on the admissibility of evidence. The most of these rulings are ignored in the appellant's brief on the appeal, and it will not be necessary to consider them. The assignments of error which were relied upon on the argument are the following: (1) The corporation being in possession, the suit is not maintainable. (2) That the appellee failed to show title. (3) The decree includes patented land conveyed by the owner to the corporation.

The appellant's principal contention is that the circuit court had no jurisdiction of the cause, for the reason that it appeared from the evidence that the complainant had no actual possession of the premises which were the subject of the suit. While admitting the doctrine sustained by the decisions of the supreme court in More v. Steinbach, 127 U. S. 70, 8 Sup. Ct. 1067, Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, and U. S. v. Wilson, 118 U. S. 86, 6 Sup. Ct. 991, that under the statute of California, and other statutes similar thereto, a suit in equity to quiet title may be maintained in the federal courts whether the complainant be in or out of the possession of the premises, the appellant contends that the doctrine is applicable only to suits concerning property whereof neither the complainant nor the defendant has the actual possession, and that equity has no jurisdiction of a bill whose office it is to perform the function of an action in ejectment, or to recover the possession of property which is in the actual and adverse possession of the defendant. This point is made for the first time in this case on the argument on the appeal. No objection was made to the jurisdiction at any time in the court below, nor is such objection included in the appellant's assignment of errors. The general assignment "that the said circuit court erred in rendering a decree herein against the said Lone Jack Mining Company" is not sufficiently specific to point out the error, if error it was, which is now complained of. The objection comes too late. Perego v. Dodge, 163 U. S. 160, 16 Sup. Ct. 971; Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486; Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594; Brown v. Iron Co., 134 U. S. 530, 10 Sup. Ct. 604. In Reynes v. Dumont the court approved the rule stated in 1 Daniell, Ch. Prac. (4th Am. Ed.) 555, as follows:

"If a defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that the plaintiff has a plain and adequate remedy at law. This objection should be taken at the earliest opportunity. The above rule must be taken with the qualification that it is competent for the court to grant the relief sought, and that it has jurisdiction of the subject-matter."

The present case comes within the terms of the rule, with its qualification. It is a case of which the court would have had jurisdiction if ejectment had been brought by the appellee against the appellant to recover the possession of the property.

It is next contended that the appellee failed to prove title in himself, for the reason that the sheriff's deed purporting to convey to him the property which was sold at the mortgage foreclosure sale was void. Its invalidity is said to consist in the fact that the sale was made by one Winchell, who was sheriff at the date of the sale, whereas the deed which followed was made by one Hilbert, his successor in office. To support this contention, reference is made to Anthony v. Wessel, 9 Cal. 103, where it was held that the proper person to execute the sheriff's deed was he who held the office at the date of the sale, notwithstanding the fact that at the date of making the deed his term of office had expired. Very soon after that decision was made, and evidently for the purpose of correcting the evil to which it directed attention, the legislature of California enacted that a sheriff should have the authority to make a deed of property which had been sold by his predecessor. St. 1858, pp. 95, 96. In section 700 of the Code of Civil Procedure it is provided as follows:

"Upon a sale of real property, the purchaser is substituted to and acquires all the right, title, interest and claim, of the judgment debtor thereto; and when the estate is less than a leasehold of two years unexpired term, the sale is absolute. In all other cases, the property is subject to redemption as provided in this chapter."

In Robinson v. Thornton, 102 Cal. 675, 34 Pac. 120, the supreme court of California, in construing this provision of the Code, said:

"The execution of the deed gave to the purchaser at the sale no new title to the land purchased by him, but was merely evidence that his title had become absolute. Upon the sale, he acquired all the right, title, interest, and claim of the judgment debtors thereto (Code Civ. Proc. § 700), subject to be defeated by redemption within six months."

Under these provisions of the statute and the Code of Civil Procedure, it is clear that such title to the premises as was sold upon the foreclosure sale passed to the purchaser thereof, and that the sheriff's deed could not lawfully have been otherwise made than as appears in the record.

It is further contended that the sheriff's sale was void, for the reason that at the time when it was made a period of more than five years had elapsed since the date of the foreclosure decree. The record discloses, however, that the order of sale was made and issued within the period of five years, and that upon its issuance steps were immediately taken to sell the property in pursuance thereof. It is provided by section 681, Code Civ. Proc., that an execution may issue at any time within five years after the date of the judgment entry. It has been held that an order of sale is an execution, within the meaning of this section. Dorland v. Smith, 93 Cal. 120, 28 Pac. 812; Rowe v. Blake, 99 Cal. 167, 33 Pac. 864. If an execution may issue at any time within five years, it follows that the execution so lawfully issued may be enforced. There is no provision of the laws of California providing otherwise, and no decision of the courts of that state

is found holding to the contrary. The general rule is therefore clearly applicable. In Southern Cal. Lumber Co. v. Ocean Beach Hotel Co., 94 Cal. 217, 29 Pac. 627, it was said:

"The levy is the essential act by which the property is set apart for the satisfaction of the judgment, and taken into the custody of the law; and, after it has been taken from the defendant, his interest is limited to its application to the judgment, irrespective of the time when it may be sold. * * * The same reasons which uphold the validity of a sale by the sheriff after the return day of the writ, where the levy was made in its lifetime, uphold a sale in cases where no levy is required."

Counsel for the appellant relies upon decisions of the supreme court of California applying the provisions of section 671, Code Civ. Proc., which prescribe the period for which a judgment lien shall live, and holding that after the expiration of the time so limited the lien expires. This provision of the Code and these decisions have no bearing upon the question under consideration. The lien which was enforced upon the foreclosure sale was not a statutory judgment lien, but was the contract lien of the mortgage; and, if this were the case of a sale upon a judgment lien, there would be no application of that rule to the present proposition, for the reason that there is here no question of the priority of liens, and no rights whatever dependent upon the question whether or not a statutory or judgment lien existed at the time when the levy was made. The complainant's title rests upon the mortgage lien, and upon the foreclosure sale made in pursuance thereof, and the rights of the parties are those of the mortgagors and the mortgagee.

It is urged that no title is shown in the appellee, for the reason that the original location made by John Hanley on September 21, 1880, was void. At that time Hanley was not a citizen of the United States, and had not declared his intention to become a citizen. On March 10, 1883, he conveyed an undivided one-half interest in his claim to Julius Johnson. On October 3, 1884, he made his declaration of intention, and on March 19, 1886, he and Johnson conveyed the claim to Orth and Anderson, who subsequently executed the mortgage through which the appellee deraigns title. Section 2319, Rev. St., declares that the mineral lands belonging to the United States shall be open to "occupation and purchase, by citizens of the United States and those who have declared their intention to become such." It has been held that an alien who explores and locates a mining claim on public lands may hold his interest, as against all the world except the United States, notwithstanding the fact that the statute just quoted confines the right of exploration, purchase, and occupation to citizens of the United States, or to persons who may have declared their intention to become such. Billings v. Smelting Co., 2 C. C. A. 252, 51 Fed. 338; Id., on rehearing, 3 C. C. A. 69, 52 Fed. 250. In the latter case it was said:

"If a party is seeking to procure the title to mining property from the United States, if taken at the proper time, the objection of alienage would prevent the acquirement of title, and such objection may be made by any one adversely interested. In such cases the sovereign is a party in fact to the proceeding, which is a direct one for the procurement of title; and the objection of alienage, no matter by whom suggested, is based solely upon the right of the government to interpose the fact of alienage as a bar to procuring or holding an interest in

realty. If, however, the grant of title, or the equivalent, is made to an alien, it cannot be attacked by any third party."

In Manuel v. Wulff, 152 U. S. 505, 14 Sup. Ct. 651, the principle involved in the foregoing quotation was applied to the case of a conveyance of a mining claim by a qualified locator to an alien; and it was held that the conveyance operated to transfer the claim to the grantee, "subject to question in regard to his citizenship by the government only." But if the right of Hanley as a locator could now be brought in question, upon the ground that he was an alien at the time when the location was made, we are of the opinion that his subsequent declaration of intention to become a citizen related back to the date of his location, and, in the absence of adverse rights attaching prior to the date of the actual declaration of intention, operated to validate the location. In Manuel v. Wulff the supreme court quoted with approval the ruling of the secretary of the interior in Re Krogstad, 4 Land Dec. Dep. Int. 564, in which it was held that an alien having made homestead entry, and subsequently filed his intention to become a citizen, the alienage at the time of entry would not, in the absence of an adverse claim, defeat the right of purchase; and the decisions in the cases of Governeur's Heirs v. Robertson, 11 Wheat. 332, and Osterman v. Baldwin, 6 Wall. 116, in which it was held that "naturalization has a retroactive effect, so as to be deemed a waiver of all liability to forfeiture, and the confirmation of title."

The appellant makes the further point in its reply brief that the Hanley location was abandoned after the transfer to Anderson and Orth, and that Hanley went into possession and did the assessment work of 1886 and 1887 to prevent forfeiture, and that the work so performed by him inured to his benefit under his original notice, thereby reinstating him and destroying the title of his grantees, and that when Hanley and Johnson surrendered the possession to the appellant, in November, 1888, the surrender constituted an abandonment of the claim, and left the same open to relocation. This point is not found in the assignments of error, and if the determination of it involved an extensive examination of the evidence, or a decision of the facts from conflicting evidence, we would be inclined to give it no further consideration; but the contention is disposed of by the plain facts of the record. It appears from the transcript that when the appellee was about to offer evidence of the performance of the assessment work the appellant expressly stipulated that the work had been done up to the year 1888. The stipulation is susceptible of no other construction than that the work done was done for the benefit of the title which became vested in the appellee. It was proven, also, that the appellant first acquired title to the mining claim by deed from Anderson and Orth on May 15, 1886, and that it went into possession under this conveyance, and performed the assessment work of that year.

It is admitted by the appellee that through inadvertence the decree includes patented land that was conveyed to the appellant by the owner, and which is not covered by the title which was vested in the appellee through the foreclosure proceedings. No application was made in the court below to amend the decree in this regard, and no

objection was taken thereto either by motion or by assignment of error. The cause will be remanded to the circuit court, with permission to amend the decree in conformity with this admission of the appellee. In all other respects the decree will be confirmed, with costs to the appellee.